IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HARLAN I. JOHNSON, SR.          :          CIVIL ACTION
                                :
      v.                        :
                                :
DELAWARE COUNTY JUVENILE        :
DETENTION CENTER                :          NO. 11-1166

MEMORANDUM

Dalzell, J.                                March 16, 2012

          Plaintiff Harlan I. Johnson, Sr. ("Johnson") brings

suit against his former employer, the Delaware County Juvenile

Detention Center ("the Center"), asserting claims[1] under Title

VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§

2000e, et seq., the Age Discrimination in Employment Act (the

"ADEA"), 29 U.S.C. § 621 et seq., and the Pennsylvania Human

Relations Act (the "PHRA"), 43 Pa. Stat. Ann. § 951, et seq.

Johnson's claims arise out of his termination in January of 2010.

          The Center has moved to dismiss Johnson's claims,

arguing that they are predicated upon the allegedly more

favorable treatment of a younger, white employee who was

(nonetheless) not similarly situated to Johnson.  For the reasons

---

1.  Johnson has informed the Court that he "will not further
pursue his claims under the 1866 Civil Rights Act, Count II, and
the First Amendment, Count V."  Pl.'s Mem. in Resp. to Def.'s
Mot. to Dismiss ("Pl.'s Mem.") at 1 n.1.  We will therefore
dismiss those two Counts.

we articulate below, we will deny the Center's motion and instruct it to answer Johnson's amended complaint.

## I.   **Factual Background**

In ruling on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), we "'accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom,'" Ordonez v. Yost, 289 Fed. Appx. 553, 554 (3d Cir. 2008) (quoting Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)), "'consider[ing] only allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" Brown v. Daniels, 128 Fed. Appx. 910, 913 (3d Cir. 2005) (quoting Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004)).

We thus begin by reciting the facts alleged in Johnson's amended complaint and the exhibits thereto.  According to the amended complaint, Johnson is an African-American male who was born in 1957, while the Center is an "activity" of Delaware County.  Pl.'s Am. Compl. ¶¶ 4-5.  From about June 13, 1994 until January 19, 2010, Johnson worked as a detention officer at the

Center, which temporarily detains alleged juvenile criminal offenders as they await adjudication.  Id. ¶¶ 11-12.

In the late 1990s, Ronald A. Berry ("Berry") became Director of the Center.  Id. ¶ 14.  Johnson alleges that since Berry's appointment there have been disproportionate and disparate terminations and other discipline of African-American staff at the Center, and that Berry has scrutinized the conduct of African-American employees -- including Johnson himself -- more closely than that of white employees. Id. ¶¶ 15-16.

On May 13, 2006, Berry terminated Johnson's employment, allegedly because he abandoned his post.  Id. ¶ 17.  Johnson was a member of the American Federation of State, County, and Municipal Employees, Local 3107 (the "Local"), and a member of a collective bargaining unit which had an agreement ("CBA") with the County of Delaware under which grievances could be submitted to arbitration.  Id. ¶¶ 18-19.  On May 19, 2006, the Local filed a grievance on Johnson's behalf challenging his termination, and the Local and Delaware County agreed to submit the grievance to arbitration before the Honorable Edward J. Zetusky, Jr., a judge of the Court of Common Pleas of Delaware County sitting as an arbitrator under the CBA.  Id. ¶¶ 20-21.  On December 11, 2006,

Judge Zetusky issued a decision providing as follows, Ex. B to

Pl.'s Am. Compl.:

> Enclosed herewith please find a copy of my
> Opinion and Order in the above, which
> provides, inter alia, for the following:
>
> • The termination of employment of Mr.
>   Johnson is to be vacated.
>
> • For the incident of May 13, 2006, Mr.
>   Johnson is to be given a long term
>   suspension, without pay, until the next
>   opening of a position of detention
>   officer at the Juvenile Detention
>   Center.
>
> • When such position becomes available,
>   Mr. Johnson is to be reinstated with
>   seniority which existed prior to May 15,
>   2006.
>
> • In the future, if Mr. Johnson absents
>   himself from his duty station, for any
>   reason, without permission, he will be
>   subject to immediate termination.

On January 19, 2010, Berry again ended Johnson's

employment for violating Center policies that prohibited

"'absenting one's self without supervisory permission from the

customary place of his work assignment," "'mak[ing] or

receiv[ing] personal phone calls,'" and "'bring[ing] cellular

phones into the facility.'"  Pl.'s Am. Compl. ¶ 24.  Johnson

alleges that, in fact, aside from the prior alleged violation of

Center policies in 2006, he had not absented himself from his

4

customary place of assignment as Berry charged.  Id. ¶ 25.
Furthermore, Johnson avers that in December of 2009, a younger,
white employee, Nicholas "Bollose"[2], left his assignment without
supervisory permission and went home, without receiving any
discipline, and that Johnson's use of his cellular phone on the
occasion in question did not exceed that commonly tolerated by
other, white employees.  Id. ¶¶ 26-27.

     The Local filed a grievance on Johnson's behalf, and
agreed with Delaware County to submit the grievance to
arbitration before the Honorable Chad F. Kenney, Sr., another
judge of the Court of Common Pleas of Delaware County sitting as
an arbitrator under the CBA for this instance.  Id. ¶¶ 28, 30.
On February 2, 2011, Judge Kenney issued a decision providing
that "the January 19, 2010 termination of Harlan Johnson, from
the Delaware County Juvenile Detention Center, is hereby
AFFIRMED."  Ex. A to Pl.'s Am. Compl. at 3.

     On April 16, 2010, Johnson filed charges of racial and
age discrimination with the Equal Employment Opportunity

_____

2.  We note that Johnson and the Center proffered different
spellings of this employee's name.  See Def.'s Mem. in Supp. of
Mot. Dismiss ("Def.'s Mem.") at 6.  We adopt the Center's
spelling in this Memorandum, and thus refer to him as Bellossi.

Commission ("EEOC").  These charges were cross-filed with the
Pennsylvania Human Relations Commission ("PHRC").  Id. ¶¶ 7-8.
On March 17, 2011, the EEOC issued a written determination and a
notice of right to file suit.  Id. ¶ 10.

## II.  **Analysis**

Fed. R. Civ. P. 12(b)(6) provides that "a party may
assert the following defenses by motion: . . . failure to state a
claim upon which relief can be granted."  The Supreme Court has
explained that "only a complaint that states a plausible claim
for relief survives a motion to dismiss," leading a reviewing
court to engage in a "context-specific" inquiry that "requires
[it] to draw on its judicial experience and common sense."
Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  Under this
standard, a pleading may not simply offer "labels and
conclusions," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555
(2007), and "[t]hreadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not suffice."
Iqbal, 129 S. Ct. at 1949.  Rather, "[f]actual allegations must
be enough to raise a right to relief above the speculative
level," Twombly, 550 U.S. at 555, which is to say that there must
be "more than a sheer possibility that a defendant has acted

unlawfully." <u>Iqbal</u>, 129 S. Ct. at 1949.  Essentially, a plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" of the cause of action, <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks omitted).

> The Center argues that
>
> Plaintiff's amended complaint conveniently omits the significant and overwhelming fact that Plaintiff had absented himself from his assigned work station, in direct violation of the Detention Center policies, on more than one occasion.  Additionally, at the time of his termination Plaintiff was on a 'last chance' reinstatement to employment. Plaintiff cannot and indeed does not make any allegation that the Caucasian male (N. Bellossi) shared any similar disciplinary record or 'last chance' status as that of Plaintiff.

Def.'s Mem. at 6.  Johnson responds that he has facts supporting the <u>prima facie</u> elements of his case, only one element of which is genuinely in dispute.  Pl.'s Mem. at 2-4.

Before considering these arguments, we must first consider what a plaintiff asserting claims of employment discrimination must allege to survive a motion to dismiss.  As our examination below demonstrates, the requisite minima remain somewhat unclear.

## A.    <u>Stating A Claim For Employment Discrimination</u>

29 U.S.C.A. § 623(a)(1) provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," while 42 U.S.C.A. § 2000e-2(a)(1) makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

A plaintiff may prove violation of § 2000e-2(a)(1)[3] by either a "mixed-motive" or "pretext" analysis, while a mixed-motive analysis is not available under the ADEA.  As we explain below, the contours of a "pretext" analysis are less well-settled under Title VII than they are under the ADEA.

_____

3.  As our Court of Appeals has explained, "[t]he legal analysis governing [a plaintiff's] PHRA claim is identical to that under Title VII, and the discussion that follows applies to both claims."  <u>Guirguis v. Movers Specialty Servs., Inc.</u>, 346 Fed. Appx. 774, 775 n.1 (3d Cir. 2009).

### i.  __Establishing A Title VII Or ADEA Claim__

Under a "mixed-motive" Title VII analysis, a plaintiff may establish liability by proving "race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice," § 2000(e)-2(m).  A plaintiff may accomplish such proof by either direct or circumstantial evidence.  __Desert Palace, Inc. v. Costa__, 539 U.S. 90, 92 (2003).  An employer may then restrict the remedies available to a plaintiff, though not absolve itself of liability, by "demonstrat[ing] that the respondent would have taken the same action in the absence of the impermissible motivating factor."  § 2000e-5(g)(2)(B).

A "mixed-motive" analysis is __not__ available under the ADEA.  Instead, as the Supreme Court has explained, "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action.  The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." __Gross v. FBL Financial Services, Inc.__, 129 S. Ct. 2343, 2352 (2009).

Both the ADEA and Title VII permit a plaintiff to prove his case through a "pretext" theory, as elucidated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  As our Court of Appeals has rehearsed, "[u]nder <u>McDonnell Douglas</u>, the plaintiff bears the burden of proof and the initial burden of production, having to demonstrate a prima facie case of discrimination . . . Once the plaintiff satisfies these elements, the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action.  If the employer does so, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for . . . discrimination." <u>Smith v. City of Allentown</u>, 589 F.3d 684, 689 (3d Cir. 2009) (internal citations omitted).  Inasmuch as "the burden of persuasion, including the burden of proving 'but for' causation or causation in fact, remains on the employee" throughout this exercise, "<u>Gross</u>, which prohibits shifting the burden of persuasion to an ADEA defendant, does not forbid our adherence to precedent applying <u>McDonnell Douglas</u> to age discrimination claims." <u>Id.</u> at 691 (citations and quotation marks omitted).

The elements of a plaintiff's <u>prima facie</u> case under Title VII are well-settled: "a plaintiff must show that: (1) she

is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated persons who are not members of her protected class were treated more favorably or that the circumstances of her termination give rise to an inference of discrimination." Warfield v. SEPTA, 2012 WL 363062, at *2 (3d Cir. 2012). With respect to the fourth element of this case, our Court of Appeals has emphasized that "a plaintiff claiming discriminatory firing need not prove, to make out a prima facie case, that she was replaced by someone outside the relevant class." Pivorotto v. Innovative Sys., Inc., 191 F.3d 344, 347 (3d Cir. 1999).

Yet more doubt shadows the elements of a prima facie case under the ADEA.  In Smith, 589 F.3d at 689, our Court of Appeals explained that a plaintiff "demonstrate[s] a prima facie case of discrimination by showing first, that the plaintiff is forty years of age or older; second, that the defendant took an adverse employment action against the plaintiff; third, that the plaintiff was qualified for the position in question; and fourth, that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus."  The retention in the fourth element of

this test of the more restrictive standard discarded in the Title VII context does not necessarily appear to be inadvertent.

In <u>Pivorotto</u> itself the Court noted that "nothing in the ADEA requires that an age-discrimination plaintiff prove that he was replaced by someone under the age of 40 (as opposed to someone sufficiently younger to create an inference of discrimination)." <u>Pivorotto</u>, 191 F.3d at 357. More recently, our Court of Appeals "affirm[ed] the District Court's dismissal of [a plaintiff's] age discrimination claims" because the Court "correctly found that [the plaintiff] did not allege facts that he was replaced by a 'sufficiently younger' individual to raise an inference of discrimination based on age," notwithstanding the plaintiff's "general allegations that he was treated differently than younger employees." <u>Ruddy v. U.S. Postal Serv.</u>, 2011 WL 6450477, at *3 (3d Cir. 2011). Generally speaking, our Court of Appeals has usually expressed the standard for a <u>prima facie</u> case under the ADEA by requiring a terminated employee to show that he was replaced by a significantly younger employee. <u>See</u>, <u>e.g.</u>, <u>Hodczak v. Latrobe Specialty Steel Co.</u>, 2011 WL 5592881, at *1 (3d Cir. 2011); <u>Novak v. Posten Taxi, Inc.</u>, 386 Fed. Appx. 276, 278 (3d Cir. 2010); <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1108 (3d Cir. 1997).

12

Our Court of Appeals has also noted that a plaintiff may establish a prima facie case under the ADEA by showing, inter alia, "that younger employees received comparatively more favorable treatment." Fallon v. Meissner, 66 Fed. Appx. 348, 351 (3d Cir. 2003). Our Court of Appeals has similarly explained that under Title VII and the ADEA in order "[t]o make out a prima facie case, [a plaintiff] must show, among other things, that he suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination. Those circumstances may include the more favorable treatment of similarly situated individuals outside of the plaintiff's protected class." Greenawalt v. Clarion Cty., 2012 WL 256045, at *2 (3d Cir. 2012) (internal citations omitted); see also Morrissey v. Luzerne Cty. Cmty. Coll., 117 Fed. Appx. 809, 812 (3d Cir. 2004) (under Title VII, ADEA, or PHRA, fourth element of prima facie case requires plaintiff to establish that "circumstances give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class").

Moreover, in an early opinion describing a plaintiff's prima facie case under the ADEA, our Court of Appeals explained that "a plaintiff alleging a discriminatory layoff need show only

13

that he is a member of the protected class and that he was laid off from a job for which he was qualified while others not in the protected class were treated more favorably." <u>Massarsky v. General Motors Corp.</u>, 706 F.2d 111, 118 (3d Cir. 1983). Similarly, in <u>Maxfield v. Sinclair Int'l</u>, 766 F.2d 788, 793 (3d Cir. 1985) (emphasis added), the Court "h[e]ld that an ADEA plaintiff <u>may</u> establish the fourth element of the <u>McDonnell Douglas</u> test for a prima facie case by showing that s/he was replaced by a person sufficiently younger to permit an inference of age discrimination" -- thereby not foreclosing demonstration of this element by other means.

We further note that the rationale set forth in <u>Pivorotto</u> for a relaxed <u>prima facie</u> requirement in Title VII cases applies equally well to plaintiffs alleging discriminatory termination under the ADEA.  As Judge Becker there explained,

> [E]ven if a woman is fired and replaced by another woman, she may have been treated differently from similarly situated male employees.  This seems to us to be self-evident.  An employer may fire a woman who makes a single mistake (while retaining men who make numerous similar mistakes), yet replace her with another woman whom the employer hopes will meet his (higher) expectations for female employees.  Or an employer may fire women who fail to act in a particular manner (e.g., 'feminine,' assertively, non-assertively), but not

14

> require male employees to act in any
> particular way.

Pivorotto, 191 F.3d at 353-54 (internal citations omitted).  As applied to ADEA cases, employers using distinct and unreasonable expectations of older employees could run afoul of the law while still hiring such employees.

We also recall that the Supreme Court noted in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (internal quotation marks omitted) -- in an observation that remains valid, notwithstanding other questions about this decision's continuing viability to which we turn below -- that "the precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic."  Our Court of Appeals recently reiterated this principle in the ADEA context, noting that "'the requirements of the prima facie case are flexible' and must be evaluated in light of the particular circumstances of the case before the court.  This applies with particular force to the fourth element of the prima facie case of discrimination."  Kuzdrowski v. Nicholson, 314 Fed. Appx. 410, 413 (3d Cir. 2008) (internal citations omitted) (quoting Pivorotto, 191 F.3d at 357).

This jurisprudence favors flexibility in formulating prima facie cases, applies Pivorotto's rationale to ADEA cases, and imposes a more relaxed standard for the fourth element of a plaintiff's prima facie case under the ADEA. Under it a plaintiff may prove this element by establishing circumstances that give rise to a fair inference of unlawful discrimination, and may include replacement by a significantly younger employee or more favorable treatment of similarly situated individuals outside the protected class. We presume that our Court of Appeals, when it has expressed a more restrictive formulation of this test, did so in light of the specific circumstances of the cases then under consideration.

### ii.  Alleging A Claim Under Title VII Or The ADEA

We have discussed at length the requirements of a prima facie case under Title VII and the ADEA because these elements may be relevant to the facts a plaintiff must allege to state a claim. The precise nature of these allegations are not well-delineated. As our Court of Appeals noted in Guirguis, 346 Fed. Appx. at 776 n.6, "the quantum of facts that a discrimination complaint should contain may bear further development."

In 2002, the Supreme Court considered "whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth by this Court in <u>McDonnell Douglas Corp. v. Green</u>," and concluded that "an employment discrimination complaint need not include such facts and instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" <u>Swierkiewicz</u>, 534 U.S. at 508 (internal citation omitted). The Court explained that (1) "[t]he prima facie case under <u>McDonnell Douglas</u> . . . is an evidentiary standard, not a pleading requirement," <u>id.</u> at 510; (2) "the <u>McDonnell Douglas</u> framework does not apply in every employment discrimination case," inasmuch as "if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case," <u>id.</u> at 511; (3) "the precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic," <u>id.</u> at 512; and (4) a complaint "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" <u>Id.</u> at 512 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

Following the Supreme Court's revision a few years later of the pleadings standard, our Court of Appeals concluded that "because Conley has been specifically repudiated by both Twombly and Iqbal, so too has Swierkiewicz, at least insofar as it concerns pleading requirements and relies on Conley." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).  In Swierkiewicz's place, our Court of Appeals explained that "[t]he plausibility paradigm announced in Twombly applies with equal force to analyzing the adequacy of claims of employment discrimination." Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315, 322 (3d Cir. 2008).

Just what this means remains unclear.  As noted, Swierkiewicz rested on a number of rationales, only one of which explicitly derived from Conley.  Fowler thus does not necessarily imply the invalidity of Swierkiewicz's underlying holding that an employment discrimination plaintiff need not plead the elements of a prima facie case to state a claim. Indeed, our Court of Appeals has recently cited Swierkiewicz for the proposition that a plaintiff may support an inference of discrimination "in a number of ways, including, but not limited to, comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of

18

discrimination from statements or actions by her supervisors suggesting racial animus." Golod v. Bank of Am. Corp., 403 Fed. Appx. 699, 703 n.2 (3d Cir. 2010).  To be sure, our Court of Appeals has upheld the dismissal of a plaintiff's Title VII claims because "his complaint does not state a prima facie case for national origin discrimination," McCauley v. Computer Aid, Inc., 242 Fed. Appx. 810, 812 (3d Cir. 2007).  District courts in this Circuit have also concluded that a plaintiff must plead the elements of a prima facie case in order to state a claim under the ADEA.  See, e.g., Prisco v. Methodist Hosp., 2011 WL 1288678, at *3 (E.D. Pa. 2011) (Dubois, J.); Foster v. Wesley Spectrum Servs., 2010 WL 3431103, at *2 (W.D. Pa. 2010).

        This jurisprudence seems to us to be readily reconcilable.  Since a plaintiff may establish a violation of Title VII by either a "pretext" or "mixed-motive" analysis in order to state a claim such a plaintiff must allege concrete facts that, if proven, would either (1) establish his prima facie case under McDonnell Douglas, or (2) show that race, color, religion, sex, or national origin was a motivating factor for any workplace practice.  A plaintiff asserting a claim under the ADEA must similarly make factual allegations that, if true, would either (1) establish his prima facie case under a pretext

analysis or (2) show that age was the "but-for" cause of the challenged adverse employment action.  Under either Title VI or the ADEA, a flexible formulation of the <u>prima facie</u> case should be used that permits allegation of any circumstances that fairly give rise to an inference of unlawful discrimination.  Such an approach satisfies <u>Swierkiewicz</u>'s concerns regarding the variety of ways in which an employment discrimination plaintiff may establish his claims as well as the need to eschew rigid <u>prima facie</u> formulations, as well as <u>Wilkerson</u>'s emphasis on requiring such plaintiffs to allege a plausible entitlement to relief.

> **B.** **<u>The Sufficiency Of Johnson's Claims</u>**

With this legal framework in mind, we now consider whether Johnson has stated a claim in his amended complaint under Title VII (and hence the PHRA) and the ADEA.  With respect to both, Johnson attempts to state a claim by alleging the elements of a <u>prima facie</u> case under <u>McDonnell Douglas</u>.

Regarding Johnson's Title VII claim, he rightly notes that the Center does not dispute the adequacy of the first, second, or third elements of his case.  Pl.'s Mem. at 2-3.  Regarding the fourth element, the Center argues that the "Amended Complaint quite simply summarily asserts that Plaintiff was

treated differently than a Caucasian detention officer who, at some unspecified time, 'abandoned his shift and went home and received no discipline,'" Def.'s Mem. at 6, but that "Plaintiff cannot and indeed does not make any allegation that the Caucasian male (N. Bellossi) shared any similar disciplinary record or 'last chance' status as that of Plaintiff." Id. Johnson responds that he has also alleged that the Director of the Center, Berry, "engaged in a pattern of scrutiny of African American employees such as the plaintiff that was more intense than that toward white employees, and that there have been disproportionate terminations and other discipline of African American employees during the period since the 1990s while he has been director." Pl.'s Mem. at 4 (citations omitted).

As already noted, a plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" of the cause of action. Phillips, 515 F.3d at 234 (quotation marks omitted). Though Johnson's allegations as to Berry's claimed pattern of disproportionate terminations and scrutiny of minority workers are not quite "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," Iqbal, 129 S. Ct. at 1949, they are so vague and lacking in specificity that

21

they do little to bolster the plausibility of Johnson's claim. These allegations essentially amount to an averment that Berry "treated African American employees differently than white employees."  We will disregard such conclusory allegations in judging whether Johnson has alleged the fourth element of his prima facie case.

We are thus left with Johnson's remaining allegations, namely that (1) in December of 2006, Judge Zetusky issued an arbitration decision providing that Johnson would be subject to immediate termination if he absented himself from his work assignment, Pl.'s Am. Compl. ¶ 22; (2) Johnson was terminated for leaving his work assignment and using his cellular phone, id. ¶ 24; (3) he had not actually left his work assignment on the occasion in question,[4] id. ¶ 25; (4) use of cellular phones by other, white employees was commonly tolerated, id. ¶ 27; and (5) a younger, white employee was not disciplined for leaving his work assignment without permission.  Id. ¶ 26.  Essentially,

---

4.  We note that Judge Kenney determined that while Johnson "may have stayed within the confines of the 'C-1 Unit,' however, the surveillance video clearly showed that Mr. Johnson left the place of his work assignment."  Ex. A to Pl.'s Am. Compl. at 2.  The parties have not briefed us on the preclusive effect, if any, of Judge Kenney's decision, so that we will not consider his factual findings to be conclusive in ruling on the Center's motion.

Johnson has identified two types of comparator employees who were treated more favorably than he: white employees who used their cellular phones without discipline, and a younger white employee who left his work assignment without discipline.  Johnson has conceded, however, that he was subject to a "last chance" decision at the time he was terminated, and he does not allege that any of the alleged comparator employees had a similar status.

Based on these allegations, we conclude that Johnson has stated a claim under Title VII.  Our Court of Appeals has stressed that "[t]hough 'similarly situated' does not mean 'identically situated,' a plaintiff must demonstrate that she is similar to the alleged comparator in relevant respects." Warfield, 2012 WL 363062, at *3.  With respect to his cellular phone use, Johnson's allegation that white employees were not disciplined for similar conduct raises an inference of discrimination.  Whether such employees were on any kind of probationary status is irrelevant since Judge Zetusky's decision did not state that cellular phone use would result in Johnson's termination.  As for Johnson's alleged absence from his work assignment, he contests this fact so the adverse employment action of which he complains is not just termination but the

23

leveling of false charges against him.  Thus, the fact that

Johnson has not alleged that Bellossi was subject to probationary

status is irrelevant, just as stated above.  Johnson alleges that

he was disciplined for conduct that he did not commit, while a

white employee was not disciplined for conduct that he did

commit.  For the purposes of this allegation, Bellossi is

similarly situated to Johnson.[5]

As for Johnson's ADEA claim, the first, second, and

third elements of his prima case case here appear to be

uncontroverted.  With respect to the fourth element, Johnson has

not alleged that any younger employee avoided discipline for use

of cellular phones.  We consider, however, that his allegations

as to Bellossi -- i.e., that he was younger than Johnson, and

avoided discipline for committing an action, while Johnson was

disciplined despite not committing the same action -- raise an

inference of discrimination sufficient to state a claim.

---

5.  We note that if Johnson conceded that he had, in fact,
absented himself from his work assignment without permission, so
that the adverse action of which he was complaining consisted
solely of terminating him for that transgression, our analysis of
whether Bellossi and Johnson were similarly situated would be
different.

We will thus deny the Center's motion to dismiss in its entirety.[6]


BY THE COURT:


__\s\Stewart Dalzell

---

6.  Save the concession described in note 1, above.